UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

REGINALD LEE BURNS,

       Defendant.

Crim. No. 06-361-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Defendant is charged with one count of being a felon in possession of a firearm, a semi-automatic model JH High-Point .45 caliber handgun that officers discovered and seized inside a storage area on the main floor of his friend's apartment located in Portland, Oregon. Defendant has moved to suppress this evidence. Testimony and oral argument regarding this

PAGE 1 - OPINION AND ORDER

motion were heard in court on June 1, 2007. For the following reasons, defendant's Motion to Suppress [14] is denied.

**BACKGROUND**

Portland Police Officer Robert Hollins of the department's Drugs and Vice Division, was aware of a warrant for defendant's arrest stemming from a state parole violation for Robbery I. On March 7, 2006, Officer Hollins obtained information that defendant was at 15811 E. Burnside Street, Apartment #65. At that time the apartment was rented to Ms. Danyelle Wright, who resided there. Officer Hollins' information also gave rise to concerns that defendant might possess a firearm or drugs at this location.

Officer Hollins and another Portland Police Officer deployed a surveillance of the apartment during the evening of March 7, 2006. They observed defendant accessing the apartment repeatedly without knocking, and smoking a cigarette and drinking beer outside the apartment. Because of safety concerns arising from defendant's history, the officers decided to arrest defendant in an open parking lot next to the apartment.

The officers used a Confidential Reliable Informant (CRI) to lure the apartment's occupants outside to the parking lot by going to the apartment and reporting that a car accident had occurred involving a vehicle registered to Wright. The officers observed the CRI go to the door of Apartment # 65 and speak with Wright and defendant. Wright and defendant followed the CRI to the parking lot. Defendant was taken into custody without incident or injury, and was placed inside a Portland Police patrol vehicle.

Officer Hollins told defendant he was being arrested on the outstanding arrest warrant and defendant replied he was aware of the warrant. Officer Hollins then advised defendant of his constitutional rights and defendant acknowledged that he understood his rights.

When Officer Hollins asked defendant if he had any drugs or weapons in Apartment # 65, defendant replied that he did not and explained that he did not live in the apartment, but that it was rented by Danyelle Wright. Defendant asserted that Wright was not his girlfriend, but that he was the father of Wright's child. Officer Hollins asked defendant for permission to search the residence for drugs or weapons. Defendant directed that the officer ask Wright, because he had been staying there only a few days, sleeping on the couch.

The remaining facts of the police's encounter with Wright are disputed by the parties and by Wright. The officers at the scene testified that after defendant's arrest, Wright asked an officer if she could return to her apartment to check on her four-month old child. Wright allegedly gave the officer permission to accompany her into her apartment.

The officers assert that Officer Hollins met with Wright and explained to her why defendant had been arrested for the outstanding warrant. Allegedly, Wright then told Officer Hollins that defendant was not her boyfriend and had been staying at the apartment for a few days.

The parties agree that Wright declared that if she had known that a warrant was outstanding for defendant, she would not have allowed him to stay in her apartment. Officer Hollins asserts that Wright also stated that she would not have allowed defendant to stay in her apartment if she had known that he possessed a firearm. Wright denies this.

Officer Hollins testified that he asked Wright for permission and consent to search the apartment, explaining that she had a constitutional right to require the officers to first obtain a search warrant. He testified that Wright replied that Officer Hollins did not need to get a search warrant and told him to "go ahead and search."

PAGE 3 - OPINION AND ORDER

Officer Hollins quickly discovered the .45 caliber handgun described above inside a closet area on the apartment's main floor, underneath the stairs leading to the second floor. The handgun was wrapped in a man's black t-shirt and was underneath a cover and a pillow in the storage area.

The firearm contained a magazine, loaded with five .45 caliber rounds. Wright was present when the weapon was seized, and the officers assert that she was cooperative in answering questions about the handgun. She said it was not hers and that she had never seen it before. She said she had given the bedding items that were covering the firearms to defendant for sleeping on the living room couch on the first floor. She denied recognizing the black t-shirt in which the gun was wrapped.

At the evidentiary hearing conducted by this court on June 1, 2007, Wright's testimony corroborated some of the testimony offered by the police officers, but departed significantly regarding the officers' contentions that she consented to a search of her apartment. Wright denied emphatically that she consented to a search. She alleged that one officer explained that he intended to conduct a "safety" sweep of her premises despite her protests, and she described threats made to her by the officers to take away her child and her eligibility for subsidized housing if she refused to "tell them what they wanted to hear." Wright testified that despite these threats, she did not consent to the search that ensued.

Wright also testified that an officer told her that he had seized the weapon from a storage area beneath a floorboard in the closet under the stairway. Photographs taken at the apartment after defendant's arrest revealed a small storage area under a carpet and floorboard in the closet. Photographs produced at the hearing that were taken by the police at the time of defendant's

PAGE 4 - OPINION AND ORDER

arrest do not reveal this storage area. This court found the officers' testimony at the hearing that they were unaware of the storage area to be credible.

## QUESTION PRESENTED

Did Wright freely and voluntarily give her consent to allow police officers to search her apartment?

## STANDARDS

The United States Constitution provides protections and mandates certain requirements in the event of government seizures of persons or their property. The Fourth Amendment mandates that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons to be seized.

United States Constitution, Amend. IV. This is applied to the states, and state actors, through the Fourteenth Amendment. *Elkins v. United States*, 364 U.S. 206, 213 (1960).

Consent to conduct a search is valid where it is "freely and voluntarily given," and this is a question of fact "'to be determined from the totality of all the circumstances.'" *United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

The Ninth Circuit considers the following five factors in determining whether a person has freely consented to a search:

(1) whether defendant was in custody;

(2) whether the arresting officers had their guns drawn;

PAGE 5 - OPINION AND ORDER

(3) whether rights and warnings as enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966), were explained;

(4) whether the defendant was told he or she had the right not to consent; and

(5) whether the defendant was told that a search warrant could be obtained.

*United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002)(citation omitted); *see also United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996). While no one factor is determinative, *see United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988), the Ninth Circuit's decisions upholding consent as voluntary are typically supported by at least several of these factors. *Reid*, 226 F.3d at 1026-27 (citations omitted). The Ninth Circuit has also noted that "it is not necessary for all five factors to be satisfied in order to sustain a consensual search," but rather, "a district court [must] consider the totality of the circumstances when evaluating consent." *United States v. Cormier*, 220 F.3d 1103, 1113 (9th Cir. 2000).

The government's burden of demonstrating that the consent was freely and voluntarily given is a heavy one. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997) (citation omitted). Judicial concern for the sanctity of the home "is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority." *Reid*, 226 F.3d at 1026. The Supreme Court noted that the determination of voluntariness must take into account the police questions and tactics, as well as the possibly vulnerable subjective state of the person who consents. *Schneckloth*, 412 U.S. at 229.

## ANALYSIS

Defendant's sole challenge to the seizure of the weapon found on March 7, 2006, is based upon Wright's testimony that she never consented to the search that the officers conducted of her apartment. The officers' testimony and Officer Hollins' written report following defendant's

PAGE 6 - OPINION AND ORDER

arrest, while consistent with some aspects of Wright's testimony, conflicts dramatically with Wright's recollections regarding her discussions with the officers pertaining to their search.

This conflict compels the court to evaluate the respective credibility of the testimony presented by the officers and Wright. After hearing this testimony and observing the demeanor of the witnesses, the court deems the testimony of the officers to be more credible. As noted, at the evidentiary hearing, the officers' denial of any awareness of the sub-floor storage area was believable; their surprise at the photographic evidence secured after defendant's arrest appeared genuine. In contrast, Wright's recollection of the officers' alleged threats appeared to be conclusory and – given the emotionally charged allegations – unreasonably lacking in scope or detail.

Moreover, the record and the undisputed aspects of these parties' testimony support a determination that the officers' recollections regarding Wright's consent are accurate. These parties do not dispute that Wright was cooperative and engaged in discussions pertaining to her relationship with defendant, where defendant slept while sharing her apartment, and that Wright would not have permitted defendant to stay at her apartment if she had known that there was an outstanding warrant for his arrest. Wright conceded at the hearing that she discussed these issues with the officers, and they were corroborated by the officers' testimony and in Officer Hollins' post-arrest report.

In light of this acknowledged cooperation, Wright's allegations of her vehement refusals to consent to a search, as well as her accusations that the officers threatened her, strain credulity. Wright also acknowledged at the evidentiary hearing that she has engaged in telephonic conversations with defendant since his arrest, and that she has discussed issues including the circumstances of his arrest, and taking a "vacation" with him to Canada. While not dispositive,

PAGE 7 - OPINION AND ORDER

these acknowledgments provide some opportunity and motive for Wright to alter her recollections regarding the events of March 7, 2006.

The court notes defendant's assertion that the failure of the officers to obtain written consent for the search should cast suspicion upon the circumstances surrounding the search. Defendant is correct that a signed consent would have eliminated the disputes raised here, and that it should be common practice for officers – especially those conducting surveillance and likely to be soon presented with an occasion to conduct a search – to possess consent forms and to attempt to have them executed. Nevertheless, the officers' failure to do so here has little impact upon how this court weighs the credibility comparisons between the officers and Wright.

This court concludes that the officers' testimony is more believable than Wright's testimony, and that the government has demonstrated that Wright's consent was freely and voluntarily given. In so concluding, the court has considered these factors: that Wright was never in custody and that at the time of the request for consent the officers' guns were not drawn; Wright was advised that she had the right not to consent; and Wright was also told that a search warrant could be obtained.

This determination of voluntariness is made after considering the tactics the police deployed, including using a CRI to create a ruse involving a faked vehicular accident, as well as the possibility that Wright was vulnerable or intimidated by the arrest of her friend in the presence of her infant child. Under the totality of circumstances, the court finds nothing in the record other than Wright's discounted testimony to suggest that officers exerted any overt coercion upon her to induce her to provide consent to their search. Moreover, the situation at the time was not inherently coercive. Wright was not under arrest or physically detained at the time,

PAGE 8 - OPINION AND ORDER

no guns were drawn, and Wright and the officers had indisputably engaged in discussions that reveal Wright to have been calm and cooperative.

For these reasons, and after considering the totality of all the circumstances, the court concludes that the government has met its burden of establishing that Wright's consent to search her apartment was given freely and voluntarily. No other meritorious challenges regarding the seizure of the firearm have been raised, and this court concludes that the seizure was valid.

**CONCLUSION**

Under the facts and circumstances presented, this court concludes that the consent that Danyelle Wright gave police officers to search her residence at Apartment # 65, 15811 E. Burnside Street, Portland, Oregon, on March 7, 2006, was provided freely and voluntarily. Accordingly, defendant's Motion to Suppress [14] is DENIED.

IT IS SO ORDERED.

DATED this  11   day of June, 2007.

                                            /s/ Ancer L. Haggerty
                                              Ancer L. Haggerty
                                      United States District Judge